IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:22-CR-663 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | |
| | ) | |
| MARION RANDLE, | ) | |
| | ) | **ORDER DENYING DEFENDANT'S** |
| Defendant. | ) | **MOTION TO SUPPRESS** |

This matter is before the Court on Defendant Marion Randle's Motion to Suppress (ECF No. 20), which seeks to suppress evidence seized from Defendant's home in Maple Heights, Ohio. The motion is premised upon three arguments: (1) the search warrant affidavit fails to establish probable cause that evidence of a crime would be found in the home (*id.* at PageID #139-140); (2) the affidavit contains stale information (*id.* at PageID #140-141); and (3) the Good Faith exception does not apply to this case (*id.* at PageID # 141-142).

The Government opposes suppression of the evidence seized from Defendant's home. (ECF No. 23). The Government argues *inter alia* that a confidential informant told police Defendant was selling drugs at the house in November 2020 (*id.* at PageID# 148), and that Defendant was observed (1) traveling from the residence directly to a controlled drug buy in September 2022 (*id.* at PageID# 151); (2) traveling from the residence directly to a "hand to hand" drug sale to an individual with a prior conviction for drug possession (*id.* at PageID# 152); and (3) traveling from the residence directly to a home known by officers for drug activity, with increased traffic to and from the home shortly after Defendant's arrival (*id.* at PageID# 153). The Government also asserts that if the Court should find that the affidavit does not establish probable

1

cause, the good faith exception to the exclusionary rule applies. (*Id.* at PageID# 158). For the following reasons, Defendant's Motion to Suppress is DENIED.

## BACKGROUND

Defendant was indicted on November 17, 2022, on five counts of Distribution of a Controlled Substance under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and one count of Possession with Intent to Distribute a Controlled Substance under 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (ECF No. 10). According to the Government, the investigation leading to this indictment began in 2012, when law enforcement discovered Defendant's aliases, "DJ" and "Duke," while investigating Defendant for selling heroin in the Cleveland area. (ECF No. 24, Search Warrant, PageID# 166, ¶ 2). Since that time, the government alleges a variety of different developments in the investigation, which it asserts establish probable cause that evidence of a crime would be found at the Maple Heights Property. In 2019, a methamphetamine trafficker identified Defendant as a co-conspirator and the source of the methamphetamine he had been selling. (*Id.* at ¶ 4). Also in 2019, the Statewide Narcotics Task Force anonymous tip line received multiple, anonymous calls stating that Defendant was selling heroin/fentanyl in the Cuyahoga County area. (*Id.* at ¶ 5). In 2020, additional intelligence (1) identified Defendant as a dealer in large amounts of heroin/fentanyl and methamphetamine; and (2) connected Defendant to a house in Maple Heights, Ohio (the "Maple Heights Property"), at which Defendant and his vehicle were repeatedly present. (*Id.* at ¶¶ 6–8). A confidential reliable informant (CRI 2) told law enforcement near the end of 2020 that "Duke" was selling heroin/fentanyl out of the Maple Heights Property. (*Id.* at PageID# 167, ¶ 9).

In the summer of 2022, two confidential reliable informants (CRI 3 and CRI 4) told law enforcement that "Duke" and/or "DJ" was selling large quantities of methamphetamine, with CRI 4 identifying "DJ" as Defendant based on a BMV photograph. (*Id.* at ¶ 10–11). Law enforcement

then began using CRI 4 for controlled buys, with the first three in August and the fourth occurring on September 9, 2022. (*Id.* at PageID# 167, ¶ 12; PageID# 169, ¶ 20; PageID# 170, ¶ 25; PageID# 172, ¶ 35). Notably, during the fourth controlled buy, GPS tracking and direct observation confirmed that Defendant traveled directly from the Maple Heights Property to the buy location, at which CRI 4 purchased methamphetamine with pre-recorded police buy money. (*Id.* at PageID# 172, ¶ 35). Law enforcement also repeatedly observed Defendant's vehicle(s) at the Maple Heights Property between August and October, either through direct observation or GPS technology. (*Id.* at PageID# 168–70, ¶¶ 17, 21, 25; PageID# 172–74, ¶¶ 33, 35, 37–38, 43–44).

On October 17, 2022, law enforcement observed Defendant travel directly from the Maple Heights Property to a hand-to-hand exchange with an individual with a criminal history of drug possession. (*Id.* at PageID# 174, ¶ 43). On October 19, 2022—just two days before law enforcement applied for the warrant—another confidential reliable informant, CRI 5, completed a controlled buy with Defendant. (ECF No. 23, PageID# 152; *see* ECF No. 24, PageID# 44). Prior to the buy, law enforcement observed Defendant travel to the Maple Heights Property, remain inside for three to five minutes, and then go to a known drug house in Maple Heights where traffic to and from the house increased after Defendant's arrival; the traffic consisted of persons known to law enforcement to be users and traffickers of methamphetamine. (*Id.* at ¶ 44). From there, Defendant drove to the controlled buy location and sold CRI 5 methamphetamine in exchange for the pre-recorded police buy money. (*Id.*).

Throughout the course of the investigation, specifically between June and October 2022, SEALE Detectives determined that Defendant employed significant counterintelligence to avoid law enforcement detection. Defendant has been connected to three different cell phone numbers between 2019 and 2022. (*Id.* at PageID# 166–67, ¶¶ 3, 11; PageID# 170–71, ¶¶ 25, 31).

3

Additionally, from the beginning of August 2022 to October 2022, law enforcement observed Defendant driving multiple cars rented from the Avis Car Rental in the Cleveland-Hopkins Airport. (*Id.* at PageID# 168, ¶ 14). According to law enforcement, Defendant used five different rental cars in August 2022, two in September 2022, and another in October 2022 when Defendant was arrested, all of which were seen at the Maple Heights property. (*Id.* at PageID# 167–70, ¶¶ 12, 15, 17, 18, 21, 24–25; PageID# 172–74, ¶¶ 33, 38, 42–43).

## **LEGAL STANDARD**

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, with "unreasonable" being the operative word. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) ("the ultimate touchstone of the Fourth Amendment is 'reasonableness.'"). Searches are generally considered "reasonable" when they are made pursuant to a judicial warrant based on probable cause. *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995). "Probable cause justifying the issuance of a search warrant is established if the affidavit contains particularized facts demonstrating a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Elbe*, 774 F.3d 885, 888 (6th Cir. 2014) (internal quotations omitted); *United States v. Miggins*, 302 F.3d 384, 393 (6th Cir. 2002) ("The test for probable cause is simply whether there is a fair probability that contraband or evidence of a crime will be found in a particular place."). A judicial officer's probable cause determination receives significant deference, and is only reversed if arbitrarily made. *Id.* (quoting *United States v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009)); *see United States v. McLevain*, 310 F.3d 434, 439 (6th Cir. 2002) (explaining that a state court judge issuing a warrant receives "great deference to the finding of probable cause" by a reviewing court).

4

I. **Probable Cause**

When reviewing the state court judge's determination that probable cause existed to issue a search warrant, this Court must determine whether the judge "had a substantial basis for concluding that 'a search would uncover evidence of wrongdoing." *Miggins*, 302 F.3d at 393 (citing *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000)); *Illinois v. Gates*, 462 U.S. 213, 236 (1983). When a search warrant requests authority to search a home, a judge can find probable cause without direct evidence of criminal activity inside the home itself. *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991). Rather, a judge may rely on the totality of the circumstances described in the affidavit to find a "fair probability . . . that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985) (per curiam)).

In the case of individuals with a history of drug dealing, "a nexus exists between a known drug dealer's criminal activity and the dealer's residence when some reliable evidence exists connecting the criminal activity with the residence." *United States v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008). *See United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (finding insufficient nexus between criminal activity and the defendant's home when "the warrant affidavit [was] based almost exclusively on the uncorroborated testimony of unproven confidential informants"); *United States v. Caicedo*, 85 F.3d 1184 (6th Cir. 1996) (upholding a warrant to search a defendant's home when the defendant lied about his address to law enforcement, and the warrant affidavit stated that "the reason for hiding the correct residence *could be* that further evidence *may be* located at this location which *could be* used against [the defendant] in this particular investigation) (emphasis added); *Miggins*, 302 F.3d at 393 (upholding warrant authorizing search of a home when the only connection between the criminal activity and the home

5

was a piece of paper found during a search related to a co-conspirator, which included the defendant's address along with aliases associated with the drug conspiracy).

An individual's status as a known drug dealer is not, without more, enough to establish probable cause to search that individual's home. *Gunter*, 266 F. App'x 415, 418 (6th Cir. 2008). The evidence connecting the illegal activity to the residence must be reliable for a warrant to properly issue. *Id.* (citing *Frazier*, 423 F.3d at 533). An individual's status as a known drug dealer with "continual and ongoing operations," corroborated by law enforcement, supplies probable cause to search the individual's home. *United States v. Bethal*, 245 F. App'x 460, 467 (6th Cir. 2007) (citing *United States v. Newton*, 389 F.3d 631 (6th Cir. 2004), vacated on other grounds, 546 U.S. 803 (2005)). *See United States v. Castro*, No. 1:07CR360, 2008 WL 2017571, at *10 (May 7, 2008) (concluding that, regarding known drug traffickers, the connection required between the crime charged and the defendant's home is "at best, minimal").

Defendant argues that all evidence collected from the Maple Heights Property should be suppressed because the search warrant affidavit failed to establish probable cause justifying issuance of the warrant by Judge Gall. (ECF No. 20, PageID# 139). In particular, Defendant argues that, absent evidence of drug transactions in the home—via controlled buys, direct surveillance, wiretaps, trash pulls, or other specific intelligence that Defendant stored drugs in the home—there was not a reasonable nexus between Defendant's criminal activity and the Maple Heights Property to support a search under the Fourth Amendment. (*Id.* at PageID# 140). Defendant also notes that "on only one of the five alleged controlled buys did Defendant travel *directly* from his home to the buy locations." (*Id.*).

Defendant's arguments are unpersuasive. The affidavit incorporated into the search warrant plainly connects Defendant's alleged drug-related activities to the Maple Heights

6

Property, not only during the fourth controlled buy to CRI 4 (during which law enforcement observed Defendant traveling directly from the Maple Heights Property to the buy location), but in other ways as well. (ECF No. 24, PageID# 172, ¶ 35). Defendant was observed traveling directly from the Maple Heights Property to a suspected hand-to-hand drug transaction with an individual with a prior drug-related conviction. (*Id.* at PageID# 174, ¶ 43). Two days before law enforcement applied for the warrant, Defendant was observed traveling directly from the Maple Heights Property to a known drug house, which experienced increased traffic in and out of the house during Defendant's visit, and thereafter traveling to the controlled buy with CRI 5. (*Id.* at PageID# 174, ¶ 44). Far from lacking probable cause, the warrant affidavit repeatedly connects Defendant to the Maple Heights Property through alleged drug dealing and surveillance of the vehicles he used during each of the controlled buys. To the extent that the Government need only "some reliable evidence" connecting Defendant's alleged drug trafficking to the Maple Heights Property, the warrant certainly meets that standard. *See United States v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008).

    **II.**    **Staleness**

Another facet of probable cause is the relative age of the information the affidavit contains. *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010) (citing *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)). Whether a search warrant contains stale information depends on factors like (1) "the character of the crime (chance encounter in the night or regenerating conspiracy?)"; (2) "the criminal (nomadic or entrenched?)"; (3) "the thing to be seized (perishable and easily transferable or of enduring utility to its holder?)" and (4) "the place to be searched (mere criminal forum of convenience or secure operational base?)." *Id.* (quoting *United States v. Hammond*, 351 F.3d 765, 771–72 (6th Cir. 2003)).

While it is true that information relating to drug crimes has a shorter shelf life than certain other crimes, "[i]nformation related to drug *trafficking* does not grow stale as quickly as information regarding mere possession." *United States v. Leaster*, 35 F. App'x 402, 409 (6th Cir. 2002 (citing *United States v. Payne*, 181 F.3d 781, 790 (6th Cir. 1999)) (emphasis added). *See United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009) (explaining that information relating to drug crimes tends to go stale quickly "because drugs are usually sold and consumed in a prompt fashion"). Evidence collected from controlled buys made days, weeks, or even a few months prior to the warrant's issuance are generally considered fresh (i.e., not stale). *See, e.g.*, *United States v. Sinclair*, 631 F. App'x 334, 348 (6th Cir. 2015) (holding that 15-day gap between last law enforcement observation and warrant issuance did not negate probable cause); *Spikes*, 158 F.3d at 924 (finding probable cause based on affidavit information collected two months prior to warrant affidavit); *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998) ("In investigations of ongoing narcotic operations, intervals of weeks or months between the last described act and the application for a warrant [does] not necessarily make the information stale.").

Moreover, in the drug-trafficking context, when "the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant," and subsequent corroboration of otherwise stale information can "refresh" the information for the purposes of probable cause. *Spikes*, 158 F.3d at 924 (quoting *United States v. Johnson*, 461 F2d 285, 287 (10th Cir. 1972); *see United States v. Greene*, 250 F.3d 471, 480–81 (6th Cir. 2001) (finding evidence of ongoing criminal activity mitigated 23-month gap between 12 controlled buys and warrant issuance). In *Spikes*, while the investigation described in the affidavit spanned four years, it included information obtained as recently as ten days before issuance of the search warrant along with intelligence gathered through law

8

enforcement's ongoing observation of the comings and goings at the defendant's residence. 158 F.3d at 924.

Here, while at least some of the information in the warrant is years old, the controlled buys coordinated by law enforcement all occurred within three months of the date the search warrant issued. Controlled buy #1 allegedly occurred on August 9, 2022 (ECF No. 23, PageID# 148; *see* ECF No. 24, PageID# 167, ¶ 12). Controlled buy #2 allegedly occurred on August 25, 2022. (ECF No. 23, PageID# 149; *see* ECF No. 24, PageID# 169, ¶ 20). Controlled buy #3 allegedly occurred on August 30, 2022. (ECF No. 23, PageID# 150; *see* ECD No. 24, PageID# 170, ¶ 25). Controlled buy #4—the buy during which Defendant was observed traveling directly from the Maple Heights Property to the buy location—allegedly occurred on September 9, 2022. (ECF No. 23, PageID# 151; *see* ECF No. 24, PageID# 172, ¶ 35). The final controlled buy, controlled buy #5, allegedly took place only two days before law enforcement applied for the warrant, on October 19, 2022. (ECF No. 23, PageID# 152; *see* ECF No. 24, PageID# 174, ¶ 44).

Like *Spikes,* the affidavit incorporated into the search warrant includes a significant history of law enforcement's investigation dating back to 2012 when they discovered Defendant's purported aliases, "Duke" and "DJ." (ECF No. 24, PageID# 166, ¶ 2). The affidavit includes somewhat newer information describing an ongoing drug-trafficking enterprise, connecting Defendant to a convicted methamphetamine trafficker during a 2019 jail call and subsequent proffer, (*id.* at ¶¶ 3–4), and intelligence gathered in 2020 from the FBI/HIDTA Task Force, two confidential reliable informants, and periodic surveillance of the Maple Heights Property (*id.* at ¶¶ 6–9). Almost the entire remainder of the affidavit—paragraphs 10 through 46—describes law enforcement's investigation spanning from June 2022 to October 2022, up to a mere two days prior to the warrant's issuance, including five controlled buys and significant surveillance of

9

Defendant's activities. For these reasons, the Court finds that the investigative information supporting the warrant is not stale, and properly lead to Judge Gall's determination that there was probable cause to issue the search warrant and search the Maple Heights Property.

### III. Good Faith Exception

In *United States v. Leon*, 468 U.S. 897, 919 (1984), the Supreme Court explained that the exclusionary rule exists as a deterrent to unlawful police conduct—typically willful, or at least negligent—by precluding the fruits of such unlawful conduct from admission into evidence at trial. *Id.* (quoting *United States v. Peltier*, 422 U.S. 531, 539 (1975)). Suppression of evidence obtained as the result of a search not supported by probable cause is appropriate "only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional[.]" *Id.* (quoting *Peltier*, 422 U.S. at 542). Put another way:

> [W]here the officer's conduct is objectively reasonable, "excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty."

*Id.* at 919–20 (quoting *Stone v. Powell*, 428 U.S. 465, 539–40 (1976) (White, J., dissenting)). *Leon* goes on to explain that these contours of the exclusionary rule make even more sense in the context of "an officer acting with objective good faith [who] has obtained a search warrant from a judge or magistrate and acted within its scope." *Id.* at 920. Thus, where the exclusionary rule exists to deter wrongful police conduct, the good faith exception to the rule exists to protect well-intentioned law enforcement officers exercising objectively reasonable, good faith reliance upon the validity of a court-issued warrant. *See id.* at 919 (emphasizing that the "standard of reasonableness . . . is an objective one").

In the instant case, the good-faith exception to the exclusionary rule is a non-issue. As the Court has previously indicated, there is ample information in the search warrant affidavit to support the state judge's finding that there was probable cause to issue a search warrant. Therefore, the resulting search of the Maple Heights Property did not violate Defendant's Fourth Amendment rights. It necessarily follows that the exclusionary rule is not implicated in this case, since there is no Fourth Amendment violation. That said, the *Leon* good-faith exception to the rule is not applicable to this case.

IV. **Evidentiary Hearing**

Finally, this Court has discretion to decide a motion to suppress with or without an evidentiary hearing. "If the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question[,]" then an evidentiary hearing must be held prior to deciding the motion. *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019). If the arguments in the motion are purely legal in nature, an evidentiary hearing is not required. *Id.* (citation omitted). There do not appear to be any contested issues of fact here; rather, Defendant and the Government disagree about whether the contents of the affidavit satisfy the requirements of probable cause. Since the dispute before the Court is purely legal, the Court will decide the Motion without a hearing.

## **CONCLUSION**

The Court finds that the search warrant for the search of the Maple Heights Property was supported by probable cause, and the information contained therein was not stale. Because there was no Fourth Amendment violation as a result of the search, the exclusionary rule and the good-faith exception to same are inapplicable to this case. The suppression arguments presented by

Defendant are legal in nature, and do not give rise to a factual dispute; as a result, the Court is deciding this matter without an evidentiary hearing. Defendant's Motion to Suppress is DENIED.

**IT IS SO ORDERED.**

**Dated: January 10, 2023**

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**